LOTTINGER, Judge.
This matter is before us on an appeal taken by the plaintiff in a petitory action from a judgment of the district court which dismissed her suit. By motion filed with us representing that the defendant, A. Dennis Landry, died on October 18, 1958, the latter’s widow, Mrs. Gussie Rodemacher Landry, individually and as natural tu-trix of her minor children Judy, Ted and Kent Landry, was substituted as party defendant.
The petition sets forth that the plaintiff is the owner of the following described property:
“1. That certain lot or parcel of ground, together with all buildings and improvements thereon and thereunto belonging, and being situated in the Caillouet place, a subdivision in the City of Lafayette, Louisiana, and according to a plat of said addition on file in the Clerk of Court’s Office of the Parish of Lafayette, is known and designated as all of Lots 17, 19 and 21. Said lots are contiguous and together have a front on Caillouet Place of 75 feet by a depth in parallel lines of 75 feet, and are bounded northwesterly by Caillouet Place, northeasterly by Lot 15, property of Laurent Dauterive, southeasterly by parcel of ground hereinafter described, and southwesterly by Lot 23 of said Caillouet Place, property of A. Dennis Landry.
“2. That certain parcel of ground, together with all buildings and improvements thereon and thereunto belonging, situated in the rear and adjoining the parcel of ground hereinabove described. Said parcel of ground has a width on the northeasterly and southwesterly boundaries, of 25 feet by a depth within parallel lines of 75 feet, and is bounded northwesterly by Lots ,17, 19 and 21 of Caillouet Place hereinabove described, northeasterly by property :of ‘Laurent J. Dauterive, southeasterly by Alex Langlinais, and southwesterly by parcel of. land sold by Waldo H. Dugas to A.'Dennis Landry by Act No. 131601, records of-Lafayette Parish, Louisiana.” ■ = ■ ■
After alleging that she had acquired the above described property from Waldo H. Dugas by act of sale dated April 1, 1952, the plaintiff then went on to allege that the defendant had disturbed her possbssion thereof by locating a portion of his garage building thereon.
The defendant’s answer generally denied the allegations of the petition, but admitted his possession of a portion of Lot 21 of Caillouet Place in the City of Lafayette and then went on to allege that he was the owner of the following described property:
“Lots 23, 25, 27 and a portion of Lot 21, Caillouet Place, a Subdivision in the City of Lafayette, Louisiana.!’
and also the following described property:
“A certain parcel of ground situated in the City of Lafayette, Louisiana, and being bounded as follows: Northerly by property of Waldo H. Dugas, southerly by property of L. P¡, De-Blanc, easterly by property of Bennett J. Voorhies, and westerly by property of A. Dennis Landry. The property herein sold having the following dimensions: Beginning at the Northwest corner of said property and running in an easterly direction a distance of twenty five (25) feet, more or less; to the property of Bennett J. Voorhies, thence in a southerly direction a distance of twenty five (25) feet, more or less, to the property of L. P. DeBlanc, thence in a westerly direction a dis *844 tance of twenty-five (25) feet, more or less, to the property of A. Dennis Landry, and thence in a northerly direction a distance of Twenty-five (25) feet, more or less, to the property of Waldo H. Dugas.”
After setting forth the various sales by which he acquired his property the defendant specifically averred that he had acquired a portion of Lot 21 by virtue of a certain boundary agreement entered into between him and Waldo H. Dugas under date of March 10, 1938. Alternatively, he pleaded ten year acquisitive prescription by virtue of the aforesaid boundary agreement.
.. Following the filing of the answer, the plaintiff filed an additional petition wherein she sought to call in warranty, under the provisions of LSA-R.S. 13:3381 et seq., her vendor, Waldo H. Dugas. This petition was met with a plea of prescription and exceptions ot no cause or right of action. The latter were sustained by the trial judge.
As may be seen from the above and foregoing, the contest involves a portion of Lot No. 21 in what is known as the Caillouet Place subdivision in the City of Lafayette, Louisiana. The record reveals that this subdivision was dedicated from a plat drawn by Mr. Val E. Smith, C. E., on February 18, 1926. An examination of a photostatic copy of this plat, introduced into evidence as “P-1”, reveals that the subdivision consists of two series of lots which all front on a street designated as Caillouet Place. Those lots on the west thereof bear even numbers and those to the east (with which we are here concerned) bear odd numbers and all measure 25 feet front on Caillouet Place by depths of 75 feet. They commence with Lot No. 1 which is on the corner of the intersection of Caillouet Place and Oak Avenue on the north and run through Lot No. 47 which adjoins Tolson I’lace on the south.
It appears that shortly after the dedication of the subdivision Mr. Waldo H. Dugas purchased Lots 17 and 19, which, of course, are contiguous. Subsequently Dugas and the original defendant, A. Dennis Landry, acquired in indivisión Lots 21 and 23, and later Landry purchased Lots 25 and 27. Dugas then purchased a parcel of land, which was not a part of the original Cail-louet Place subdivision, but which lay in the rear of and adjacent to Lots 17, 19, 21 and 23 and which measured 25 feet in depth by a front of 100 feet along the aforesaid four lots.
By virtue of an act of partition dated December 18, 1930, entered into between Dugas and Landry, the latter became the owner of Lot No. 23 and the former became the owner of Lot No. 21. On March 10, 1938, Dugas sold to Landry a parcel of ground measuring 25 feet by 25 feet situated to the rear, or easterly, of Lot No. 23. This act contained a stipulation which will be quoted and discussed hereinafter.
On April 1, 1952, as alleged in the petition, the plaintiff entered into an act of sale with Waldo H. Dugas which act described Lots 17, 19 and 21 and the 25 feet by 75 feet adjacent to and to the east thereof as here-inabove described.
The stipulation in the act from Dugas to Landry, dated March 10, 1938, reads as follows:
“That the vendor and vendee herein further declared that the boundary line separating their respective properties is positively defined to the entire satisfaction of said appearers, that said present boundary line shall continue to the property of Bennett J. Voorhies, which after the recordation of this act of sale shall be the easterly boundary of a part of the property of vendee herein; that the purpose of this agreement is to prevent an uneven boundary line between the properties of the said appears.”
Before proceeding to an analysis of the testimony offered with respect to the above quoted stipulation, we might point out here *845 that the record discloses that sometime after the dedication of -the Caillouet Place subdivision, confusion arose among the various purchases of lots therein as to whether the side lines of the lots ran perpendicular to Caillouet Place or parallel to Oak Avenue, which, as pointed out previously, intersects Caillouet Place. The testimony of Fred M. Colomb, C. E., shows that these two streets do not intersect at a 90 degree angle, but rather at an angle of 88 degrees and ten minutes. As a result of this confusion, the testimony of Mr. Colomb, as well as his plat identified as “D-l”, shows that the property lines of various of the owners of lots on the east side of Caillouet Place do not conform with the lines as originally laid out by Mr. Smith.
Coming now to the stipulation in question, Mr. Landry testified:
“The primary purpose of that acquisition was to acquire a piece of ground roughly measuring twenty-five (25) feet in four directions and the secondary purpose was to make Lot Lines straight so there would be no dog-leg between us.”
He reiterated this on page 86 as follows:
“Again I will go back, sir, to my previous answer stating that my primary objective was to acquire a piece of ground twenty-five (25) feet in four (4) directions and the secondary objective of that act was to make sure that the property line between us would be on a straight line. Our impression at the time as evidenced by my acts as my neighbor, Mr. Dugas, respected a line which was at right angle to Caillouet Place Street and it was on that assumption that we entered into this agreement and it was simply a precautionary measure to make sure that the boundary lines that we had in mind would not in the future be attacked.”
Mr. Waldo H. Dugas, a member of the Lafayette Bar, was called by plaintiff as a witness. On pages 99 and 101 Mr. Dugas gave the following testimony:
“Q. Was anything placed on such boundary line at the time you resided on this property? A. No, Sir, Mr. Landry and I recognized or apparently attempted to recognize the dividing line which Mr. Val E. Smith, official engineer, had made when he ran the lines perpendicular to Caillouet Place rather than parallel with Oak Avenue. I might say that Mr. Dauterive recognized the same boundary line, the one that ran perpendicular with Caillouet Place rather than running parallel with Oak Avenue.
“Q. You mean, Mr. Dauterive, you folks, recognized boundaries other than those then established by the official plat of the sttbdivision ? A. Not recognize, Mr. Adams, but that is the way it yums down the whole subdivision.”
On page 102, Mr. Dugas gave the following testimony:
“Q. Let me ask you this. After the act of sale had been passed in favor of Mr, Landry where you sold him a twenty-five foot piece of land, more or less, what was the boundary line between your respective properties then?
A. It was the second line that Mr. Val Smith had made, the one that he made run perpendicular to Caillouet Place rather than the one he had officially made running parallel with Oak Avenue.
“Q. Prior to this sale what had been the boundary line between your property and Mr. Landry’s property? The line as shown on the official plat or the unofficial line which you folks decided to recognize out there? A. The unofficial line.”
The following from Mr. Dugas’ testimony on pages 103 and 104 is pertinent:
“Q. Was that official survey job being done by Mr. Smith, was a plat of *846 that survey ever recorded in the clerk’s office? A. Mr. Adams, the only plat which is recorded is the official plat which Mr. Smith drew up in which he made all lines run parallel with Oak Avenue, but as I say, that subdivision was drawn up and recorded, dedicated and no one built immediately after-wards. When I was the first one to build, when I went to build I had no idea at all so I called Mr. Smith and asked him to put down the stakes and that is when he moved it over to make it perpendicular to Caillouet Place instead of paralleling Oak Avenue as he had done in the official subdivision.
“Q. And you stated that by custom and usage all of the other people in the subdivision have followed perpendicular lines. A. Yes, Sir.”
On page 104 Mr. Dugas stated that he had prepared the act dated March 10, 1938.
On page 105 Mr. Dugas told of shrubs which were planted on what he and Mr. Landry considered the dividing line between their properties. With particular reference to this shrubbery, he said on pages 105 and 106:
“Q. You planted day lillies on what you thought inside your property? A. Correct.
• “Q. And generally along what you thought was the property line at that time? A. It was along the unofficial property line because it never had been made official.
“Q. In other words, the shrubbery which you planted inside of your property generally was parallel to the unofficial property line. A. Yes, Sir, that is correct.”
Mr. Dugas’ testimony is summarized in the following quotation from page 111:
“Q. Mr. Dugas, when you sold Mrs. Camos, you stated you sold by the official plat but that you folks had been recognizing this unofficial line. Is that correct? A. Yes, Sir.
“Q. Did you mention that fact to Mrs. Camos? A. No, Sir, and I am very sorry that I didn’t. It was done rather quickly at Mr. Mouton’s office, at the time Mrs. Camos complained she wasn’t feeling too well. I forgot and I am sorry. If Mrs. Camos hadn’t taken it as it was I wouldn’t have sold, but I am very sorry. It would have been to the best interest of all concerned if that had been mentioned.” (Emphasis supplied.)
The plats introduced into evidence as “P-2” and “D-l” show clearly that the 25 foot by 100 foot tract purchased by Mr. Dugas extended some two feet seven inches beyond the northerly line of Lot No. 17, thereby creating an uneven boundary line. Consequently, when Mr. Landry acquired from Mr. Dugas on March 10, 1938, the southerly 25 feet by 25 feet of this tract, the southern boundary of same would be two feet seven inches northerly of the rear northerly corner of Lot No. 25. Further, the northerly beginning point of this tract would be two feet seven inches north at the rear of the dividing line between Lots 21 and 23 according to the official plat of the subdivisions.
The above and foregoing considered it seems apparent to us, as it did the trial judge, that the only reasonable interpretation to be given the act of March 10, 1938, was that Mr. Dugas and Mr. Landry both intended that the latter have an even northerly line to his property which would necessarily include a portion of Lot No. 21 according to the official plat of the subdivision.
By placing this interpretation on the provisions of the act, the title of the defendant to a portion of Lot No. 21 is the more ancient and, therefore, the demands of the plaintiff must be rejected.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.